**ALBEMARLE CORPORATION**

v.

**CHEMTURA CORPORATION, et al.**

**Civil Action No. 05–1239–JJB–SCR.**

United States District Court,
M.D. Louisiana.

June 23, 2008.

Rudolf E. Hutz, Eric J. Evain, Daniel J. Harbison, Brian Lemon, Helena Rychlicki, Alan Silverstein, Connolly, Bove, Lodge & Hutz, LLP, Wilmington, DE, L. Victor Gregoire, Charles S. McGowan, Jr., G. William Jarman, Kean, Miller, Hawthorne, D'Armond & Jarman, LLP, Baton Rouge, LA, for Albemarle Corporation.

Richard D. Harris, Jeffrey P. Dunning, Kevin J. O'Shea, Richard P. Bender, Cameron M. Nelson, Greenberg Traurig, LLP, Chicago, IL, Brian A. Jackson, Dana M. Douglas, Liskow & Lewis, New Orleans, LA, for Great Lakes Chemical Corporation.

### RULING ON MOTION TO EXCLUDE EVIDENCE, TO COMPEL DISCOVERY AND FOR SANCTIONS [1]

STEPHEN C. RIEDLINGER, United States Magistrate Judge.

Before the court is Albemarle Corporation's Motion to Exclude Evidence, To Compel Discovery and For Sanctions. Record document number 160.[2] The motion is opposed.[3]

Plaintiff Albemarle Corporation filed this motion seeking sanctions against the defendants for their alleged misconduct during the discovery process. This motion focused on the defendants' production of over 10,000 pages of discoverable documents several weeks after the close of fact discovery. Plaintiff argued that these documents, which included documents generated by Julie Sacarias' quality control laboratory, meeting notes maintained by John Ariano, and meeting notes maintained by James Siebecker, were only produced after each respective witnesses disclosed the documents' existence during their depositions. Plaintiff argued that these examples of belated discovery production illustrate the defendants' practice of producing relevant documents only after one of their witnesses admits they exist.

Plaintiff sought relief under Rule 37(c)(1), Fed. R.Civ.P., and argued that the defendants' behavior warrants imposition of the following sanctions:

1) An order excluding the testimony of Julia Sacarias, James Siebecker, and John Ariano from trial or for use in any supporting declaration or affidavit;[4]

2) An order compelling defendants to produce a Rule 30(b)(6), Fed.R.Civ.P., designees or designees to discuss all information contained in the documents produced after the close of fact discovery that relates in any way to occluded free bromine and/or the vacuum melt testing method, and that such deposition should take place at Albemarle's trial counsel's office at the defendants' expense;

3) An order compelling the immediate production of all documents and informa-

---

1. So as to make it unnecessary to file this ruling under seal, it does not include the specific confidential factual information cited by the parties in their memoranda.

2. Plaintiff's supporting memorandum was filed under seal. Record document number 169.

3. Defendants' opposing memorandum was filed under seal. Record document number 167. Plaintiff filed a reply memorandum under seal. Record document number 191.

4. Plaintiff requested that the order reflect that it may still use these witnesses' Rule 30(b)(6) testimony for any purpose.

tion redacted and/or withheld that are listed in the defendants' Twelfth Supplemental Privilege Log; and,

4) An order directing that the following facts are established at trial:

a) Daniel McGoogan did not care whether the occluded free bromine was measured in defendants' decabromodiphenylethane product;

b) In 2005, the defendants studied the vacuum melt method as used to measure the occluded free bromine in de cabromodiphenyl ethane (the Kaizen Study) and decided to continue to take these measurements;

c) In 2005, the defendants considered a DE–83R low free bromine wet cake to be patentable; and,

d) The defendants withheld all of these facts from the plaintiff.

Plaintiff asserted that it attempted to resolve the discovery issues that arose from the defendants' belated production but that the defendants would only consider taking corrective measures if the plaintiff 1) provided a specific description of how it was harmed by the allegedly belated production and 2) identify the specific documents that contradict the defendants' position.[5] Plaintiff argued that it was thus required to bring this motion and identify the information contained in the documents that are relevant to issues in this case and that potentially contradict various positions taken by the defendants. Plaintiff argued that it has suffered irreparable harm from the defendants' misconduct since the defendants are now forewarned of the potential conflicting evidence created by the information contained in the documents.

■ Defendants initially argued that the plaintiff lacked good faith in bringing this motion as required under Rule 37(a)(1). Prior to filing its motion, the plaintiff informed the defendants that it was harmed by the belated production and requested that the defendants withdraw Sacarias, Ariano, and Siebecker from their witness list.[6] In its response to the plaintiff's request, the defendants stated that they would not consider taking any corrective measures unless the plaintiff disclosed what information it believed contradicted the defendants' position and how it was prejudiced by the delay in production.

As explained more fully below, the defendants' condition was unreasonable and placed the plaintiff in a disadvantage. To be in good faith, the plaintiff was required to make a reasonable attempt to resolve the discovery dispute; the plaintiff was required to agree to the defendants' conditions. Plaintiff's actions were sufficient to satisfy the requirements of Rule 37(a)(1).

■ With respect to the merits of the motion, a review of the record and the parties' arguments show that the defendants violated the scheduling order and that sanctions under Rule 37(b)(A) are warranted. It is undisputed that the documents at issue were produced by the defendants (1) after the March 16, 2007 fact discovery deadline,[7] (2) after the defendants certified to the plaintiff that their document production was complete on March 29, 2007,[8] and (3) after the depositions of the Sacarias, Ariano, and Siebecker.

Defendants argued that the sanctions sought by the plaintiff were unreasonable because the information in the documents was either cumulative or had little or no relevance and thus constituted a harmless error.[9] In support of its motion, the plaintiff provided several excerpts from the documents it considered relevant to the issues in this case, and explained that it would have questioned the witnesses about them during their depositions. Contrary to the defen-

---

5. Plaintiff exhibit P, p. 3.

6. Defendants exhibit 3.

7. Record document number 22, Scheduling Order.

8. Record document number 169, plaintiff exhibit B.

9. It is questionable whether the harmless error analysis cited by the defendants is applicable in this situation. Because the defendants' late production was not harmless, this issue does not need to be resolved.

dants' argument, the plaintiff was harmed by its inability to use discoverable documents which could have potentially affected the witnesses' testimony during their depositions. The information in the documents did not need to be directly relevant to the plaintiff's case so long as it had the potential to lead to relevant evidence. Moreover, the fact that the documents contain cumulative information does not negate the harm since this Court is not in a position to predict how the deposition testimony may have been affected if the plaintiff had received the documents timely and used them during these depositions.

Plaintiff has shown that it was prejudiced by the defendants' actions. Defendants did not produce the documents until after the witnesses' depositions, and then would only agree to consider taking corrective measures if the plaintiff disclosed how it had been harmed and what information in the documents it believed contradicted the defendants' positions. Providing this information directly to the defendants would have undermined the plaintiff's strategy and given the defendants a clear and undeserved advantage—an advantage which they would not have but for their own belated production of the documents. By the plaintiff subsequent disclosure of this information to support its motion, the defendants are now forewarned of the issues raised by the documents. This kind of the harm cannot be cured through follow-up discovery.

Defendants also argued that their failure to produce the documents was reasonable because (1) the plaintiff's discovery requests did not specifically seek the documents at issue and (2) they acted diligently in their production efforts. These arguments are unpersuasive. Plaintiff has shown that its discovery requests did encompass the documents at issue.[10]

Defendants claim that they were unaware of the existence of the documents until the depositions of Sacarias, Ariano, and Siebecker were taken is not credible. These documents were created and/or maintained by the defendant's employees. If the defendants were not aware of the existence of these documents, their ignorance was entirely self-imposed. Defendants put on blinders and now seek to excuse their conduct because they cannot see.

Defendants have adamantly argued that Sacarias, Ariano, and Siebecker are so integral to this case, that exclusion of their testimony from trial would deprive them of their ability to present their case. Thus, the defendants' failure to timely request and obtain all discoverable documents from these witnesses demonstrates their obvious lack of diligence during the discovery process.

Based on these circumstances, the plaintiff's second, third, and fourth requested sanctions are appropriate and reasonable. Plaintiff's second sanction requested that a Rule 30(b)(6) designee or designees be produced for deposition at Albemarle's trial counsel's office, at expense of the defendants, to discuss the belatedly produced documents that relate in any way to occluded free bromine and/or the vacuum melt testing method. Defendants objected to the payment of expenses and the deposition location on the basis that the plaintiff failed to make a good faith effort to confer with defendants prior to filing its motion. This argument was previously discussed and determined to be without merit. The prejudice caused by the defendants' actions warrants allocating the costs of the deposition to the defendants and allowing Albemarle to choose the deposition location.

A follow-up Rule 30(b)(6) deposition and assessment of deposition costs alone will not balance the harm incurred by the plaintiffs. Thus, additional sanctions are warranted. Considering the progress of the case, the plaintiff's first requested sanction—excluding the testimony of Sacarias, Ariano and Siebecker—is too harsh a penalty. Imposing the remainder of the sanctions requested by the plaintiff provides a sufficient deterrent for any further negligent and/or abusive behavior.

Defendants argued that there is no factual or legal justification for the plaintiff's third sanction—waiver of their privilege claims identified on the Twelfth Supplemental Privi-

---

10. Plaintiffs exhibit DD, pp. 4–5.

lege Log. To the contrary, the defendants' lack of diligence, unreasonable demands on the plaintiff, and causing prejudice to the plaintiff justify the waiver.

With respect to the plaintiff's fourth sanction requested—that certain facts to be established for trial—the defendants argued that the proposed facts were not supported by the record. A review of each of these statements along with the corresponding belatedly-produced documents demonstrates that the proposed facts are not unsupported. Therefore, as a sanction, the plaintiff is not required to prove the accuracy of these statements. It is sufficient that each of these statements reflect a reasonable conclusion derived from the documents.

■ Under Rule 37(a)(5)(C), if the motion is granted in part and denied in part, the court may apportion the reasonable expenses incurred in relation to the motion among the parties in a just manner. Although the plaintiff's request to exclude witness testimony is denied, the plaintiff has demonstrated sufficient misconduct by the defendants to warrant imposing the remainder of the sanctions it requested. In these circumstances the defendants should bear 50 percent of the plaintiff's costs in bring this motion. No circumstances make an award of expenses unjust.

Accordingly, Albemarle Corporation's Motion to Exclude Evidence, To Compel Discovery and For Sanctions is granted in part and denied in part. Plaintiff's request for an order barring Julie Sacarias, James Siebecker, and John Ariano from testifying at the trial and from submitting any declaration or affidavit in any motion or proceeding relating to this case is denied.

Defendants shall produce a Rule 30(b)(6) designee or designees to discuss the Kaizen Study, the DE–83R Gage Study and all information contained in their belated production that relates in any way to occluded free bromine and/or the vacuum melt testing method. The deposition shall take place at the office of Albemarle's trial counsel and the defendants shall pay all reasonable court reporter costs and videography-related expenses. Defendants shall also produce to the plaintiff all documents and information re-

dacted and/or withheld which are listed in the Defendants' Twelfth Supplemental Privilege Log.

In addition to these sanctions, the following facts shall be considered established for trial:

1) Daniel McGoogan did not care whether the occluded free bromine was measured in defendants' decabromodiphenylethane product;

2) In 2005, the defendants studied the vacuum melt method as used to measure the occluded free bromine in de cabromodiphenyl ethane (the Kaizen Study) and decided to continue to take these measurements;

3) In 2005, defendants considered the DE–83R low free bromine wet cake to be patentable;

4) These facts were withheld from Albemarle during the discovery process.

Pursuant to Rule 37(a)(5)(C), the plaintiff is awarded 50 percent of its reasonable costs and attorney's fees incurred in connection with this motion. Plaintiff shall have 20 days to submit such information and affidavits as may be needed to support an award. Defendants shall then have 15 days after service to submit a response. The issue of costs and attorney's fees will then be deemed submitted for a ruling.